

**Notwithstanding anything to the contrary in the Plan or this order, Debtor shall make quarterly payments to Class 4 Claimants.**

## IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.

**Dated: March 19, 2024**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| FUJI JAPANESE STEAKHOUSE ASIAN | § | |
| BISTRO, INC. | § | CASE NO. 23-60445 |
| DEBTOR | § | |
| | § | |
| | § | CHAPTER 11, Subchapter V |

### ORDER CONFIRMING DEBTOR'S
### FIRST AMENDED PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(a)

On March 19, 2024 the Court held a hearing (the "Confirmation Hearing") to consider confirmation of the First Amended Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 (the "Plan")[1] filed herein by Fuji Japanese Steakhouse Asian Bistro, Inc. (the "Debtor") on February 1, 2024 (Docket No. 76). Present or making appearances at the hearing were counsel for the Debtor, the Debtor's representative, Shuang Lin, the Subchapter V Trustee appointed in the case (hereinafter "Sub V Trustee"), counsel for certain creditors who have entered

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

an appearance in the case, and the United States Trustee. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on August 31, 2023 (the "Petition Date"), and was qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

B.      This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Western District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

E.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1191(a).

F.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.      The First Amended Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 filed by the Debtor on February 1, 2024 (Docket No. 76) and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a consensual plan pursuant to 11 U.S.C. § 1191(a), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.      To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.      The effective date of the Plan shall be April 18, 2024 ("Effective Date"), notwithstanding anything to the contrary in the Plan.

4.      In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.      Within three (3) days after the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.      The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the

Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.      The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

8.      Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

9.      Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's

proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

10.     On the Effective Date, Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

11.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

12.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

13.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

14.     The services of the Subchapter V Trustee shall terminate upon substantial consummation of the Plan, and the Debtor is to file and serve a Notice of Substantial Consummation upon the Subchapter V Trustee, the U.S. Trustee, and all parties-in-interest within fourteen (14) days following substantial consummation as required under 11 U.S.C. § 1183(c)(1) and (2).

15.     This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

16.     The following Nonmaterial Plan Modifications are hereby approved:

17.     Notwithstanding anything to the contrary in the plan, holders of claims may pursue their rights and remedies against guarantors of debts of the Debtor, and nothing in the Plan enjoins them pursuing such guarantors.

18.     As to creditor PNC Bank, notwithstanding anything to the contrary in the Plan, the Debtor shall cure the contractual arrearages to PNC Bank for months of October through December of 2023 and January through March of 2024 by tendering payment in the amount of $104,690.53 such that the payment is received by PNC Bank on or before March 26, 2024.   Commencing April 1, 2024, Debtor shall continue its ongoing monthly payments to PNC Bank as contemplated in the Plan.

19.     As to creditor Newtek, notwithstanding paragraph 10 above, Newtek's lien on the Debtor's real property shall not be extinguished unless and until the 60-month payments contemplated in the plan are complete.

20.     As to creditors McLennan County, City of Waco, and Waco ISD, Notwithstanding anything to the contrary contained within the Plan as filed,  the 2023 ad valorem taxes owing to McLennan County, City of Waco and Waco ISD ("Taxing Jurisdictions"),  which taxes are secured by real and/or personal property to be retained by the Debtors under the Plan, shall be paid by the Debtor in thirty-six (36) equal monthly installments, the first installment to be paid on or before thirty (30) days from the Plan's Effective Date.  These taxes shall bear interest at the statutory rate of 12% per annum effective February 1, 2024, until said taxes are paid in full.  The Taxing Jurisdictions shall retain the 2023 and 2024 tax liens, in their statutory priority lien

positions, until such taxes are paid in full.   The Debtor shall pay the 2024 taxes prior to the state law delinquency date with statutory penalties and interest to accrue pursuant to the Texas Tax Code if the Debtor fails to do so.

21.     Default shall occur if one monthly installment due to the Taxing Jurisdictions under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including 2024 taxes) are not paid timely pursuant to state law.   In the event of default the Taxing Jurisdiction shall send written notice of default to Debtor's attorney of record.   If the default is not cured within ten (10) days after notice of the default is mailed, the Taxing Jurisdiction may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.   The Debtor has the opportunity to cure two (2) times over the life of the Plan.   In the event of a third default, the Taxing Jurisdiction(s) may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.

# # #

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| FUJI JAPANESE STEAKHOUSE ASIAN | § | |
| BISTRO INC. | § | |
| DEBTOR | § | BANKRUPTCY CASE NO. 23-60445 |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

## ARTICLE I
## INTRODUCTION

### Identity of the Debtor

Fuji Japanese Steakhouse Asian Bistro Inc. ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, Waco Division on August 31, 2023. This First Amended Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The First Amended Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

EXHIBIT A

## Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Class 1 and 5 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Class**. The Class 2, 3 and 4 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Class 2, 3 and 4. Each holder of an Allowed Claim in Class 2, 3 and 4 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor to make payments to its creditors as set forth in this Plan. Debtor seeks to confirm a consensual plan or reorganization so that all payments to creditors required under the Plan will be made directly by the Debtor to its creditors. Regardless, if the Debtor must seek confirmation of this Plan pursuant to § 1191(b), then the Debtor will likewise seek approval from the Court to act as the payment administrator under the Plan pursuant to § 1194(b). Debtor asserts that it is in the creditors best interests for the Debtor to act as payment administrator under the Plan even if the Plan is confirmed pursuant to § 1191(b), as it will reduce administrative expenses, providing greater payout to general unsecured creditors. Debtor asserts that cause exists for the Court to allow the Debtor to act as payment administrator even if confirmed pursuant to § 1191(b).

## **Best Interests of Creditor Test**

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## **ARTICLE II**
## **DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When

3

"Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.     **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.     **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.     **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.     **"Case"** shall mean this Chapter 11 case.

7.     **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.     **"Claimant"** shall mean the holder of a Claim.

9.     **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.     **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

4

11.     **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Western District of Texas, Waco Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean Fuji Japanese Steakhouse Asian Bistro Inc.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18.     **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

19.     **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, August 31, 2023.

23.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

24.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

25.     **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

26.     **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

27.     **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

28.     **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

29.     **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.     **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.     **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE III
## REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

Fuji Japanese Steakhouse Asian Bistro Inc. ("FUJI") started operations in December 2013. The Debtor operates a full-service Japanese restaurant. FUJI had to file bankruptcy due aggressive tactics of the multiple merchant cash advance companies. These tactics and the lockup of the business bank account by the merchant cash advance companies put an impossible strain on the finances of the company, including the withdrawal of funds and the inability to allow it to pay employees or operate.

### Future Income and Expenses Under the Plan

The Debtor filed this case on August 31, 2023, to seek protection from aggressive collection efforts by creditors that, if continued, would be to the detriment of other creditors by crippling business operations. Debtor proposes to pay allowed unsecured based on the liquidation analysis and cash available. Debtor anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "A" are projections of gross income, expenses, and operating income for the next three years. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Shuang Lin. Mr. Lin will remain the owner and representative of the Debtor going forward.

## ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a full-service Japanese restaurant. To that end, the Debtor has food and beverage inventory, restaurant supplies, such as plates, cups and silverware. There is a fully secured creditor as to this property based on the liquidation analysis and UCC filings. Any secured creditor not treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtor's assets is attached hereto as Exhibit "B".

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into five classes of Claimants. These claimants will receive cash repayments over a period of time beginning on the Effective Date. While Debtor's Plan proposes to pay claims not to exceed five (5) years, nothing prevents Debtor from prepaying its claims.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $35,000.00. The Class 1 Claimants are not impaired under this Plan. All Fee Applications must be filed no later than 60 days after the effective date of the plan.

**Class 2 Claimant Priority Tax Claims (These Claims are impaired)** Allowed Priority Claims are for county, city and ISD taxes. This claim is priority, and the amounts are based on actual ad valorem taxes and or estimated returns and will be paid according to their claims below. The following class contains Debtor's actual tax and estimated tax priority claim for pre-petition estimated amounts and the proposed treatment under the Plan:

**2-1 City of Waco and/or Waco Independent School District** (This pertains to the allowed priority claim of **City of Waco and/or Waco Independent School District** in the amount of **$85,483.27 (Claim No. 1-3).** The City of Waco and/or Waco Independent School District claim is for ad valorem taxes due for 2023. The priority claim amount of $85,483.27 will be paid over 60 equal payments at 12% per annum. Payments are to begin 30 days after the Effective Date of the Plan. The monthly payments shall be at least $1,901.53 per month.

**2-1 McLennan County** (This pertains to the allowed priority claim of **McLennan County** in the amount of **$24,670.40 (Claim No. 2-1).** The McLennan County claim is for ad valorem taxes due for 2023. The priority claim amount of $24,670.40 will be paid over 60 equal payments at 12% per annum. Payments are to begin 30 days after the Effective Date of the Plan. The monthly payments shall be at least $548.78 per month.

9

**Class 3 Claimants – Secured Claims of FUJI (These claims are impaired)** Allowed Secured Claim is secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**3-1 PNC Bank (Claim No. 8-1).** PNC bank is secured by a lien on all assets of the Debtor and by the property located at 2501 S. Jack Kultgen Expressway, Waco, TX 76711, the location of the business. PNC Bank asserts it is fully secured by FUJI's business property pursuant to a UCC Liens and Deed of Trust that were recorded on September 19, 2019 which puts this claim in Lien Position 1. Therefore, the PNC Bank is fully secured as to the assets of FUJI on the plan filing date Debtor proposes to pay the secured claim of PNC Bank's claim in the amount of $2,199,683.09 pursuant to the terms of the loan. Debtor will make the monthly payments as they come due under the terms of the note.

**3-2 Small Business Administration (Claim No. 9).** SBA is secured by a blanket lien on all assets of the Debtor and the property located at 2501 S. Jack Kultgen Expressway, Waco, TX 76711. SBA asserts it is fully secured by FUJI's business property pursuant to a UCC Lien and Deed of Trust that was recorded on May 25, 2020 which puts this claim in Lien Position 2. Therefore, the SBA is partially secured due to the liquidation analysis as to the assets of FUJI on the plan filing date Debtor proposes to pay the secured claim of the SBA's claim in the amount of $4,121,368.10 pursuant to the terms of the loan. Debtor will make the monthly payments as they come due under the terms of the note.

**3-3 NewTek Small Business Finance LLC (Claim No. 10-1).** NewTek is secured by a blanket lien on all assets of the Debtor and the property located at 2501 S. Jack Kultgen Expressway, Waco, TX 76711. NewTek asserts it is fully secured by FUJI's property pursuant to a UCC Lien and Deed of Trust that was recorded on February 24, 2023 which puts this claim in Lien Position 3. Therefore, the Newtek claim of $1,091,261.86 is completely under secured due to the first liens on the property described above and the liquidation analysis as to the assets of FUJI on the plan filing date. The under secured portion of this claim of $1,091,261.86 will be treated in Class 4 of this Plan.

**3-4 Funding Metrics LLC (Claim no. 5-1))** is an alleged secured creditor in the amount of $275,605.83. The Funding Metrics LLC asserts it is fully secured by FUJI's business property pursuant to a UCC Lien that was recorded on July 12, 2023 which puts this claim in Lien Position 4. Therefore, Funding Metrics LLC is completely under secured due to the liquidation analysis as to the assets of FUJI on the plan filing date. The under secured amount will be treated in Class 4.

Class 4 Claimants -- (Allowed Impaired Unsecured Claims) are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than the 15th day of the first full calendar month following 30 days after the effective date of the plan. Debtor may begin on the fifteenth (15th) day of the month after the effective date of confirmation, to begin disbursements to the Class 4 claims. Debtor will distribute up to $161,000.00 to the general allowed unsecured creditor pool over the 5-year term of the plan. The Debtor can make monthly, quarterly or yearly payments as to the Class 4 Claimants. See attached Exhibit "C" as to payment schedule for Class 4. The Debtor's General Allowed Unsecured Claimants will receive 10.33% of their allowed claims under this plan. If any of the unsecured creditors listed below had a UCC lien or Deed of Trust lien against the Debtor, those liens shall be extinguished because of the unsecured status of their claim. Any creditors listed in the schedules of FUJI as disputed that did not file a claim will not receive distributions under this plan. See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 10.33% of Total Claim |
|---|---|---|
| | | |
| American Express (Claim No. 3-1) | $50,031.72 | $5,169.28 |
| American Express (Claim No. 4-1) | $4,146.67 | $428.43 |
| American Express (Claim No. 7-1) | $114,813.66 | $11,862.56 |
| Capital One Bank (Claim No. 6-1) | $4,404.75 | $455.10 |
| Funding Metrics (Claim No. 5-1) | $275,605.83 | $28,475.61 |
| Hong Guan Lu | $5,000.00 | $516.60 |
| Mei Ying Wu | $13,000.00 | $1,343.16 |
| Newtek Small Business Finance LLC (Claim No. 10-1) | $1,091,261.86 | $112,749.25 |
| Totals: | $1,558,264.49 | $161,000.00 |

* If any creditor has not filed a proof of claim, Fuji Japanese Steakhouse Asian Bistro Inc. reserves it rights to continue to dispute any claim and its rights to change the treatment of those claims after the proof of claim bar date.

Class 5 Equity Interest Holders (Current Owner) are not impaired under the Plan and shall be satisfied as follows: The current owner will receive no payments under the Plan; however, they will be allowed to retain their ownership in the Debtor. Class 5 Claimants are not impaired under the Plan.

11

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was November 9, 2023. The Bar Date for governmental unitsto file Proofs of Claim with the Bankruptcy Clerk was not later than 180 days from petition date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claimwas listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Standing.

Following the Effective Date, the Debtor shall have standing to object to Claims.

### Objection Deadline.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed afterthe Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

### Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

12

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.    Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Equity Interests a noticethat informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence ofthe Effective Date; and (c) such other matters that Debtors deems appropriate.

B.    Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is  Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C.    Vesting of Assets.

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan.

D.    Discharge.

1.    Consensual Plan

A consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtors will not be discharged from any debt imposed by this Plan.

2.       <u>Non-consensual Plan</u>

      A non-consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor's Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

E.       <u>Injunction Against Interference with Plan.</u>

      Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan against the Debtor. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtor.

# ARTICLE IX
# <u>MECHANICS/IMPLEMENTATION OF PLAN</u>

      Debtor anticipates the continued operations of the business to fund the Plan.

# ARTICLE X
# <u>FEASIBILITY OF PLAN</u>

      The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(i)     to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;

(ii)    to rule on any modification of the Plan proposed under section 1193;

(iii)   to hear and allow all applications for compensation to professionals and other Administrative Expenses and enter final orders;

(iv)    to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and

(iv)    to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $35,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $1,558,264.49. The Debtor's assets include funds in the bank, accounts receivables, office furniture and equipment. Administrative creditors must be paid before unsecured debts, and therefore, a liquidation would result in a smaller distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. The leases listed in Sched G will be ASSUMED as indicated in Sched G. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

15

## ARTICLE XIV
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

> Robert "Chip" Lane
> The Lane Law Firm
> 6200 Savoy Drive
> Suite 1150
> Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XV
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XVI
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION
## AND AVOIDABLE TRANSFERS

The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation by May 1, 2024. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer. No other litigation, other than actions related to avoidable transfers, is contemplated at this time

Dated: February 1, 2024

Respectfully submitted,

Fuji Japanese Steakhouse Asian Bistro Inc.

By: */s/Shuang Lin*
Shuang Lin, President/Owner

17

| Ordinary Income/Expense | Months 1-12 | Months 13-24 | Months 25-36 | Months 25-36 | Months 25-36 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Total Revenue | $3,515,828.00 | $3,592,828.00 | $3,679,828.00 | $3,768,828.00 | $3,866,828.00 |
| | | | | | |
| **Expenses** | | | | | |
| Employee Payroll | $756,000.00 | $766,000.00 | $774,000.00 | $779,000.00 | $784,000.00 |
| Payroll Taxes | $324,000.00 | $324,000.00 | $342,857.00 | $361,857.00 | $374,857.00 |
| Worker's Compensation | $48,000.00 | $49,000.00 | $50,000.00 | $51,000.00 | $52,000.00 |
| Unemployment Tax | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Property Taxes | $144,000.00 | $144,000.00 | $144,000.00 | $144,000.00 | $144,000.00 |
| Employee Housing | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 |
| Utilities/Telephone | $121,000.00 | $126,000.00 | $131,000.00 | $136,000.00 | $141,000.00 |
| Equipment Rental/Leases | $48,000.00 | $50,000.00 | $52,000.00 | $54,000.00 | $56,000.00 |
| Inventory Purchases | $1,326,400.00 | $1,379,376.00 | $1,420,757.00 | $1,463,757.00 | $1,508,757.00 |
| Repair and Maintenance | $36,000.00 | $36,000.00 | $39,000.00 | $39,000.00 | $41,000.00 |
| Insurance | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 |
| Advertising | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 |
| Bank Service Charges | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 |
| Licenses | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 |
| Credit Card Processing Fees | $120,000.00 | $122,580.00 | $126,289.00 | $126,289.00 | $126,289.00 |
| Supplies | $16,800.00 | $17,200.00 | $17,900.00 | $18,600.00 | $19,400.00 |
| Travel and Meals | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| Accountant | $18,000.00 | $19,000.00 | $20,000.00 | $21,000.00 | $22,000.00 |
| | | | | | |
| **Total Expense** | ($3,151,400.00) | ($3,226,356.00) | ($3,311,003.00) | ($3,387,703.00) | ($3,462,503.00) |
| **Net Operating Income** | **$364,428.00** | **$366,472.00** | **$368,825.00** | **$381,125.00** | **$404,325.00** |

| PLAN PAYMENTS | | | | | |
|---|---|---|---|---|---|
| Claim | Months 1-12 | Months 13-24 | Months 25-36 | Months 25-36 | Months 25-36 |
| | | | | | |
| **Priority Tax Claims** | | | | | |
| City of Waco/Waco ISD | $22,818.36 | $22,818.36 | $22,818.36 | $22,818.36 | $22,818.36 |
| McLennan County | $6,585.36 | $6,585.36 | $6,585.36 | $6,585.36 | $6,585.36 |
| | | | | | |
| **Secured Claims** | | | | | |
| PNC Bank (monthly note payments) | $197,184.00 | $197,184.00 | $197,184.00 | $197,184.00 | $197,184.00 |
| SBA (Monthly note Payments) | $117,204.00 | $117,204.00 | $117,204.00 | $117,204.00 | $117,204.00 |
| | | | | | |
| **Allowed General Unsecured Claims** | | | | | |
| Allowed General Unsecured Claims (10.33%) | $20,000.00 | $22,000.00 | $24,000.00 | $36,000.00 | $59,000.00 |
| | | | | | |
| **Annual Plan Payment** | $363,791.72 | $365,791.72 | $367,791.72 | $379,791.72 | $402,791.72 |
| | | | | | |
| **Total Remaining After Plan Payments** | **$636.28** | **$680.28** | **$1,033.28** | **$1,333.28** | **$1,533.28** |

| Assets | Gross Value on Petition Date | Current Gross Value | Asset Debts | Net Value | Lienholder |
|---|---|---|---|---|---|
| | | | | | |
| Property Located at 2501 S. Jack Kultgen Expressway, Waco, TX 76711 | $4,672,113.00 | $4,672,113.00 | $4,672,113.00 | $0.00 | PNC Bank/SBA |
| Cash | $97,027.00 | $169,557.29 | $169,557.29 | $0.00 | SBA |
| | | | | | |
| **RESTAURANT FURNITURE/FIXTURES/INVENTORY** | | | | | |
| Sushi, Perishables and Alcohol Bottles | $18,786.00 | $18,786.00 | $18,786.00 | $0.00 | SBA |
| Chairs, Plates, Tables, Barstools, Silverware, Bowls, Glassware, Fryers, Stove, Cooktop, Grills and Coolers | $73,790.00 | $73,790.00 | $73,790.00 | $0.00 | SBA |
| | | | | | |
| **INTERNET DOMAINS** | | | | | |
| Internet Domains(1) | $1.00 | $1.00 | $1.00 | $1.00 | SBA |
| | | | | | |
| **TOTAL** | **$4,861,717.00** | **$4,934,247.29** | **$4,934,247.29** | **$1.00** | |
| | | | | | |
| | | | | | |
| **Remaining Amount Available for Unsecured Creditors** | | | $0.00 | $0.00 | |
| **Total Amount of Allowed General Unsecured Claims (includes the undersecured portions of the Schedule D secured creditors)** | | | | $1,558,264.49 | |
| | | | | | |